## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Bridgett J.,                                         Civ. No. 21-791 (BRT)

      Plaintiff,

v.                                                   **MEMORANDUM**
                                                     **OPINION AND ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

      Defendant.

---

Carol Louise Lewis, Esq., Carol Lewis Attorney at Law, counsel for Plaintiff.

Tracey Wirmani, Esq., Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Bridgett J. seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 13, 15.) For the reasons set forth below, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

## BACKGROUND

### I. Procedural History

On September 22, 2016, Plaintiff protectively applied for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of

June 9, 2015. (Tr. 457, 593–99.)[1]  The Social Security Administration ("SSA") denied Plaintiff's application and again on reconsideration. (Tr. 483–87, 490–92.) On April 26, 2019, following a hearing, an Administrative Law Judge ("ALJ") found that Plaintiff was not disabled from June 9, 2015, her alleged onset date, through March 31, 2019, her date last insured. (Tr. 454–76.) Plaintiff requested review before the SSA's Appeals Council. (Tr. 588–91.)  On November 7, 2020, the SSA's Appeals Council granted Plaintiff's request for review and, on January 26, 2021, issued a partially favorable decision finding Plaintiff disabled from January 31, 2017, through December 16, 2018, but *not* disabled beginning on December 17, 2018. (Tr. 5–9.) The Appeals Council's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981.

## II.     Relevant Evidence

The Court adopts and incorporates the facts contained in the Administrative Record, (Doc. No. 12), and will include the relevant facts as necessary in the discussion below.

## DISCUSSION

## I.     Standard of Review

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's

---

[1]     Throughout this Memorandum Opinion and Order, the abbreviation "Tr." is used to reference the administrative record. (Doc. No. 20.)

impairments must be "of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The claimant bears the burden of proving disability. *Whitman v. Colvin*, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant demonstrates that she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607 F.3d at 536 (citations omitted). "[T]he substantiality of the evidence must take into account whatever fairly detracts from its weight, and the notable distinction between 'substantial evidence' and 'substantial evidence on the record as a whole,' must be observed." *Bauer v. Soc. Sec. Admin.*, 734 F. Supp. 2d 773, 799 (D. Minn. 2010) (citations omitted). This test requires "more than a mere search of the record for evidence supporting the Secretary's findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). If, after review, the record as a whole supports the Commissioner's findings, the

Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## II.   Analysis

Plaintiff disputes the Appeals Council's finding that her disability ceased on December 17, 2018, and that she has not been disabled since. (*See generally* Doc. No. 14, Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Pl.'s Mem.").) In response, the Commissioner argues that the Appeals Council properly concluded that, starting on December 17, 2018, there was a decrease in the severity of Plaintiff's gastrointestinal symptoms and an increase in her residual functional capacity ("RFC") such that she would no longer miss work at a disabling rate. (*See generally* Doc. No. 16, Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.").)

### A.  The ALJ's decision

The SSA has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4) (explaining the five-step sequential evaluation process). Steps one through three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); 20 C.F.R. §§ 416.920(a)-(d), 404.1522. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Pate-Fires*, 564 F.3d at 942; *see also* 20 C.F.R. § 416.920(e). Before step four, the ALJ assesses the claimant's RFC, "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); *see also*

4

20 C.F.R. §§ 416.920(e), 404.1545; 416.945(a) ("Your residual functional capacity is the most you can still do despite your limitations."). At step four, the ALJ must determine whether the claimant can return to his past relevant work. 20 C.F.R. § 416.920(f). If the ALJ finds at step four that a claimant cannot return to past relevant work, the burden shifts to the SSA at step five to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* §§ 416.920(g), 912, 960(c).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 9, 2015, the alleged disability onset date. (Tr. 459.) At step two, the ALJ found that Plaintiff had the following severe impairments: pancreatitis and pancreatic biliary disease; irritable bowel syndrome; iron deficiency anemia; chronic pain syndrome; complex regional pain syndrome; gastroesophageal reflux disease; gastrointestinal ulcer; fatty liver disease; and a history of gastric bypass surgery from obesity, with multiple revisions. (Tr. 459–60.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 461–62.) Before continuing to step four, the ALJ formulated Plaintiff's RFC and found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following limitations:

> occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasionally balancing as that term is defined in the Selected Characteristics of Occupations; and frequently stooping, kneeling, crouching and crawling.

(Tr. 463.) After formulating Plaintiff's RFC, the ALJ found at step four that Plaintiff was unable to perform any past relevant work. (Tr. 468.) At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 469.) As a result, the ALJ found that Plaintiff had not been under a disability at any time from June 9, 2015, her alleged onset date, through March 31, 2019, her date last insured. (Tr. 469–70.)

### B. The Appeals Council's decision

On appeal, the Appeals Council adopted the ALJ's decision except for the ALJ's findings and conclusions regarding whether Plaintiff was disabled from January 31, 2017 through December 16, 2018. (Tr. 6.) The Appeals Council noted that from January 31, 2017 through December 16, 2018, Plaintiff received recurrent treatment for her gastrointestinal impairments that sometimes occurred multiple times a month, lasting for several days at a time. Because of this constant need for significant treatment, the Appeals Council found that Plaintiff was effectively disabled during this time period:

> After considering evidence demonstrating the claimant required significant hospital treatment on many occasions, the Appeals Council finds the claimant would miss more than two days of work per month due to recurrent hospital treatment (lasting several days at a time, in some instances) for her gastrointestinal impairments. Because the claimant would miss more than two days of work per month, she was unable to perform competitive work on a regular and continuing basis. Therefore, the claimant was disabled for the period from January 31, 2017 to December 16, 2018, using Medical-Vocational Rule 202.22 as a framework for decision-making.

(Tr. 7.) However, the Appeals Council found that Plaintiff experienced improvement

after December 16, 2018, such that her disability ceased:

> After December 16, 2018, the claimant no longer required hospital
> treatment for her gastrointestinal problems. Medical records instead show
> outpatient visits for the claimant's impairments. When seen in February
> 2019, the claimant's lungs were clear, she had normal cardiac rate and
> rhythm, normal bowel sounds, no abdominal tenderness and no edema. She
> was seeing a pain specialist for chronic abdominal pain. Her anxiety and
> depression were well controlled and she was encouraged to follow up in six
> months for an annual wellness examination (Exhibit 28F, page 8).
> Similarly, an April 21, 2019[2] examination revealed the claimant was in no
> acute distress, she sat comfortably, neurological functioning was normal
> and she had normal mood and affect. She reported chronic abdominal pain
> with moderate pain relief with the use of medication (Exhibit 31F, pages 1-
> 2). Therefore, there has been a decrease in severity of the claimant's
> gastrointestinal impairments and an increase in her residual functional
> capacity such that she would no longer be absent from work more than two
> days per month and could perform a range of light work as found by the
> Administrative Law Judge.

(Tr. 7.) The Appeals Council therefore concluded that Plaintiff was no longer disabled.

(*Id.*) Plaintiff subsequently filed this lawsuit challenging the Appeals Council's decision

that she was no longer disabled after December 16, 2018.

**C. Whether substantial evidence supports the Appeals Council's finding that
Plaintiff was not disabled after December 16, 2018**

Plaintiff argues that substantial evidence does not support the Appeals Council's

finding that, after December 16, 2018, the severity of her gastrointestinal impairments

decreased and her RFC increased such that she was no longer disabled. (Pl.'s Mem. 7–8.)

If "substantial evidence" supports the findings of the Commissioner, then the

---

[2]    As the Commissioner notes in its memorandum, this date is inaccurate and likely a
scrivener's error. (Def.'s Mem. 10, n.2.) The correct date is April 1, 2019. (Tr. 1966–67.)

Commissioner's findings are conclusive. 42 U.S.C. § 405(g). The Court's review of the Commissioner's final decision is deferential because the decision is reviewed "only to ensure that it is supported by substantial evidence in the record as a whole." *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003) (internal quotation marks omitted). The Court's task is limited "to review[ing] the record for legal error and to ensur[ing] that the factual findings are supported by substantial evidence." *Id.* This Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Burnside v. Apfel*, 223 F.3d 840, 843 (8th Cir. 2000).

Here, contrary to Plaintiff's argument, the record demonstrates Plaintiff's frequent hospital visits not only decreased after Plaintiff's last visit on December 16, 2018, but the severity of her symptoms decreased as well. This decrease began shortly after she was prescribed Belbuca in December of 2018. (Tr. 1975–76.) *Before* taking Belbuca, Plaintiff had sought treatment from the St. Cloud Hospital a total of approximately fifty times for abdominal pain and had been admitted into the hospital for inpatient care for multiple days. (Tr. 1161–1673, 1679–1941.) *After* taking Belbuca, however, Plaintiff stopped visiting the emergency room for several weeks. (Tr. 1972.) As Plaintiff told Jon Sutton, PA, at her follow-up evaluation on January 17, 2019, she felt like "her pain ha[d] been managed" and that her abdominal symptoms had improved. (Tr. 1972–73.) She had even stopped taking Zofran for her nausea and her physical exam reported unremarkable findings. (*Id.*) Plaintiff's improvement continued into February 2019, when she visited

with Sutton again and noted that she "continue[d] to feel great."[3] (Tr. 1969.) At an April 1, 2019 evaluation, Plaintiff continued to report moderate pain relief with Belbuca without side effects and her physical exam showed she was not in acute distress, she sat comfortably, neurological functioning was normal, and she had normal mood and affect. (Tr. 1966.)

In her memorandum, Plaintiff acknowledges the drop in frequency to emergency rooms. (Pl.'s Mem. 8.) Nonetheless, she argues that, despite this drop, because she continued to present to the emergency room, her disability was still ongoing. (*Id.*) In particular, she notes that she visited the St. Cloud Hospital twice in March 2019: once on March 1, 2019, for abdominal pain with four days of loose stools, and again on March 3, 2019, for abdominal pain. (Pl.'s Mem. 9 (citing Tr. 120, 124).) But there is a difference between these visits from her past visits. Unlike her prior visits to the emergency room, Plaintiff's symptoms were not so severe that she was admitted for inpatient care. Additionally, Plaintiff's examinations indicated that she was "[w]ell appearing" and "normal" and was not experiencing a severity of symptoms. (Tr. 127.) Plaintiff also noted that she had stopped taking Belbuca, the medication that had reportedly been successful in treating her symptoms. (Tr. 124); *see also Wildman v. Astrue*, 596 F.3d 959, 965 (8th

---

[3]     Plaintiff notes that, during her February 21, 2019 follow-up, a diagnosis was included of "Complex Regional Pain Syndrome I of other specified site." (Pl.'s Mem. 9 (citing Tr. 1969).) Plaintiff argues this additional pain added to the difficulty of treating her symptoms. (*Id.*) But Plaintiff has not pointed to any indication in the medical records that this additional diagnosis made it difficult to treat Plaintiff's abdominal pain or interfered in any way with her treatment. Moreover, despite the diagnosis, Plaintiff's exam notes that day showed normal findings: she was in no acute distress, she sat comfortably, and her neurological examination was normal. (Tr. 1969.)

Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (quotations and citations omitted). And after being advised that narcotics could not be prescribed, Plaintiff left the emergency room, indicating she did not require any care. (Tr. 123, 128); *see also Risley v. Saul*, No. 5:19-CV-5089, 2020 WL 3525149, at *14 (W.D. Ark. June 12, 2020) (finding that a plaintiff who had sought emergency treatment was not in as much pain as she alleged when, after being told she would not be prescribed narcotics, left the hospital), *report and recommendation adopted*, 2020 WL 3515434 (W.D. Ark. June 29, 2020). Thus, even though Plaintiff visited the emergency room in March 2019, the record demonstrates the severity of her symptoms was still decreased.

Plaintiff cites to additional records from 2019, after her date of last insured, as further evidence of her continuing disability. (Pl.'s Mem. 9–11.) These records mainly involve her spinal cord stimulant implant—a procedure intended to address her abdominal pain—as well as some emergency room visits for headaches and abdominal pain. But like Plaintiff's March 2019 emergency room visits, these records do not demonstrate the kind of increased severity of impairment that Plaintiff alleges indicated that she was still disabled. For example, on June 20, 2019, Plaintiff presented to the St. Cloud Hospital emergency department with abdominal pain. (Tr. 109, 114.) However, she was not admitted for care but instead discharged with a Lidoderm patch and instructions to follow-up with her primary care provider. (*Id.*) Her labs were also unremarkable. (Tr. 114.) Additional emergency room visits for headaches related to her spinal cord stimulant implant also appear unremarkable, resulting in same-day discharge

10

after improvement of symptoms with fluids and medication, except for a single over-night stay on July 4, 2019. (Tr. 65, 68, 75, 79, 80, 85, 89.) Moreover, Plaintiff reported at various medical visits that her abdominal pain continued to improve thanks in part to the spinal cord stimulant implant. (*See, e.g.*, Tr. 31 (noting at a January 24, 2020 office visit that the "[s]timulator eased some of her abdominal pain"); 43 (noting at a September 6, 2019 office visit that Plaintiff "has a stimulator placed and reports her abdominal pain is improving"); 73 (noting at a September 9, 2019 emergency room visit that "generally her abdominal pain [ha]s been getting quite a bit better").) Finally, the lumbar epidural blood patches Plaintiff received to help control her headache pain for several months, (Tr. 136, 141, 145, 150, 165, 188, 193, 197, 202, 209, 292, 304), appear to be routine injections that do not necessarily indicate that Plaintiff cannot work. *See Brown v. Astrue*, No. 08-4026-CV-C-NKL-SSA, 2008 WL 4151613, at *2 (W.D. Mo. Sept. 2, 2008) ("The fact that a claimant requires regular healthcare appointments does not necessarily indicate she cannot work on those days.") (citing *Barnett v. Apfel*, 231 F.3d 687, 691 (8th Cir. 2010)).

A court cannot reweigh the evidence or "reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [a court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999); *see also KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (noting that the Commissioner's decision will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently") (quotations omitted). Though Plaintiff points to other record evidence that indicates she is

11

still in need of medical assistance, this evidence does not detract from the substantial evidence that supports the Appeals Council's decision. Accordingly, after careful review, the Court finds that substantial evidence supports the Appeals Council's decision that, after December 16, 2018, the severity of Plaintiff's gastrointestinal impairments decreased and her RFC increased such that she was not disabled starting on December 17, 2018. Therefore, the Commissioner's decision is affirmed.

**ORDER**

Based on the foregoing, and on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 13) is **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. No. 15) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: August 16, 2022                    *s/ Becky R. Thorson*
                                          BECKY R. THORSON
                                          United States Magistrate Judge